**UNITED STATES of America, Appellee,**

v.

**Joseph MARANDO et al., Appellants.**

**Nos. 665–668, Dockets 73–2378, 73–2433, 73–2455 and 73–2545.**

United States Court of Appeals, Second Circuit.

Argued May 20, 1974.

Decided July 3, 1974.

Certiorari Denied Nov. 11, 1974.
See 95 S.Ct. 317.

Irving Anolik, New York City (Bertram Zweibon, New York City, on the brief), for appellant Marando.

Stanley Peltz, appellant pro se.

George Santangelo, New York City (Santangelo & Santangelo, New York City, on the brief), for appellant Linder.

E. Thomas Boyle, New York City (William J. Gallagher, The Legal Aid Society, New York City, on the brief), for appellant Berardelli.

John M. Walker, Jr., Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty., Thomas E. Engel and S. Andrew Schaffer, Asst. U. S. Attys., New York City, on the brief), for appellee.

Before SMITH and TIMBERS, Circuit Judges, and TYLER, District Judge.*

TIMBERS, Circuit Judge:

Appellants Joseph Marando, Stanley Peltz, Arthur Berardelli and Lee Linder [1] appeal from judgments of conviction entered upon jury verdicts returned in the Southern District of New York on July 25, 1973 after a five week trial before Constance Baker Motley,

---

* Hon. Harold R. Tyler, Jr., of the Southern District of New York, sitting by designation.

1. In addition to the four appellants whose appeals are before us, the indictment named six other defendants. Of these, Stuart Schiffman, Leslie Zacharias and John Santini pleaded guilty to Count One; the case against Nathan Hager was severed prior to trial; Edward Craviolo pleaded guilty to a superseding information after waiving indictment; and Robert Feis was convicted at trial but has not appealed.

Marando was sentenced to suspended concurrent two year terms of imprisonment and placed on probation for five years on Counts One, Ten, Eleven and Thirteen through Seventeen. Peltz was sentenced to suspended concurrent three year terms of imprisonment and placed on probation for three years on Counts One, Two through Seven, Ten, Eleven and Thirteen through Seventeen. Peltz also was fined $3,000 on Count One. Berardelli and Linder were sentenced to concurrent two year terms of imprisonment on Counts One, Ten, Eleven and Thirteen through Seventeen. The latter two have been enlarged on bail pending appeal.

*District Judge,* finding them guilty of conspiring to violate the federal securities laws and the mail fraud statute in connection with the public offering of securities in violation of 15 U.S.C. § 77q (1970) and 18 U.S.C. §§ 371 and 1341 (1970); and finding them guilty on substantive counts of mail fraud and aiding and abetting such fraud in violation of 18 U.S.C. §§ 1341 and 2 (1970).[2]

Of the numerous claims of error raised on appeal, we find only one to be of sufficient merit to warrant discussion: the claim that the mail fraud convictions should be reversed in light of the Supreme Court's decision in United States v. Maze, 414 U.S. 395 (1974), because the mailings of the confirmation slips here allegedly were not "for the purpose of executing" the manipulative scheme charged in the indictment. Other subordinate claims of error are also raised.

We affirm.

## I.

In view of the issue to which this opinion is addressed, it is sufficient briefly to summarize the fraudulent scheme proven at trial, focusing upon the use of the mails in alleged violation of Section 1341.

The essential evidence, viewed in the light most favorable to the government, United States v. McCarthy, 473 F.2d 300, 302 (2 Cir. 1972), established the existence of a conspiracy from June 1, 1971 through November 1, 1971 among appellants and others to violate the federal securities laws and the mail fraud statute in connection with the public offering of the stock of All State Metals Stamping Co., Inc. (All State).

The government proved that the scheme which resulted in the instant convictions involved primarily a conspiracy in which co-defendant Schiffman and other employees of Kelly, Andrews & Bradley, Inc. (Kelly, Andrews), a financially ailing brokerage concern, obtained control of All State stock. They did so through co-defendant Feis of Feis Securities for the purpose of disposing of the stock at higher rigged prices. They ultimately sold or attempted to sell the artificially rigged All State stock with the assistance of Marando, Peltz, Berardelli, Linder and others.

Although there were various phases of the scheme, the mailings "for the purpose of executing such scheme", 18 U.S.C. § 1341,[3] consisted of appellants' sending broker confirmation slips to cover transactions in All State stock.[4] Counts Two through Seven involved the sending by Kelly, Andrews on July 19 and September 10 of confirmations either to various initial purchasers of All State stock or to two brokerage houses, Chartered New England, Inc. and A. G. Edwards & Sons, Inc. All were sent in connection with transactions designed to manipulate the price of All State stock.

---

2. Of the sixteen mail fraud counts charged in the indictment, Counts Eight, Nine and Twelve were dismissed as to all appellants, and Counts Two through Seven were dismissed as to Marando, Berardelli and Linder. All appellants were convicted on Counts Ten, Eleven and Thirteen through Seventeen.

3. 18 U.S.C. § 1341 provides in relevant part:
"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fradulent pretenses, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

4. Pursuant to 17 C.F.R. § 240.15c1–4 (1973), a written confirmation must be sent by a brokerage firm covering all over-the-counter transactions. There is no requirement that such confirmation slips be transmitted by mail. But the jury's finding here that appellants caused the mailings is supported by substantial evidence.

Counts Ten and Eleven related to appellants' transactions with the firm of A. H. Simon & Co. and its sole proprietor, Alan Simon. The mail fraud violations charged in these counts were predicated upon the mailing by Kelly, Andrews to A. H. Simon of confirmation slips on September 22 and 27. These confirmations covered Simon's "purchase" or "park" of 8,000 and 5,000 shares of All State stock. Pursuant to the fraudulent scheme, appellants had planned that Simon would never have to pay for the stock and that the stock never would be delivered. After the confirmation slips were mailed, Kelly, Andrews took copies of the confirmation slips, together with Simon's confirmations and the stock certificates, to the Chelsea National Bank and secured a $100,000 loan. Kelly, Andrews ultimately defaulted on this loan when Simon was unable to pay for the stock, although he had been told that the transaction was a "park".

Counts Thirteen through Seventeen related to mailings of confirmation slips to various purchasers of All State stock based on sales at artificially inflated prices. In each case, the confirmations were mailed by a broker who purchased from Kelly, Andrews for his customer's account. This was the aspect of appellants' scheme in which they sought to find brokers and other individuals in New York and the Bahamas who would place the manipulated stock. Specifically, Count Thirteen involved the mailing of a single confirmation slip by Hornblower and Weeks, Hemphill-Noyes, Inc. to a purchaser of 100 shares of All State stock who bought on the recommendation of a Hornblower employee who was a participant in the fraudulent scheme. The confirmation slips described in Counts Fourteen through Seventeen likewise were mailed by the firm of Graham Loving & Co. covering sales made by one of its registered representatives.

## II.

The Supreme Court in United States v. Maze, 414 U.S. 395, 400 (1974), reaf-firmed the rule of long standing that, to establish a violation of the mail fraud statute, "the mailing must be 'for the purpose of executing the scheme, as the statute requires,' Kann v. United States, 323 U.S. 88, 94 (1944). . . ." And the Court in *Maze* went on to reaffirm that " 'it is not necessary that the scheme contemplate the use of the mails as an essential element,' Pereira v. United States [347 U.S. 1, 8 (1954)]." 414 U.S. at 400.

Appellants nevertheless argue that *Maze* requires reversal of their mail fraud convictions because the mailings of the confirmation slips were not for the purpose of executing the manipulative scheme charged in the indictment. We disagree. We hold that the mailings here not only were in furtherance of the fraudulent scheme, but also were an integral part of the fraud itself.

Appellants' reliance on *Maze* is misplaced. The Supreme Court there dealt with an entirely different issue. The fraudulent scheme with which Maze was charged involved unlawfully acquiring in Louisville, Kentucky, a credit card which had been issued by a Louisville bank and using it to obtain goods and services from motel operators in various states. The mailings which were alleged to have been for the purpose of executing the scheme consisted of transmitting the invoices from the motels to the Louisville bank and the bank's billing the credit card owner for payment. The Court noted that Maze's scheme "reached fruition when he checked out of the motel, and there is no indication that the success of his scheme depended in any way on which of his victims ultimately bore the loss." 414 U.S. at 402. Accordingly, the Court concluded that the mailings there involved were not sufficiently related to the fraud to be for the purpose of executing the scheme.

By way of contrast, the nature and purpose of the mailings in the instant case readily distinguishes them from *Maze*. The confirmation slips here were a regular and contemplated step prior to final settlement of the individual securi-

ty transactions. They also were used to obtain further financing. Receipt of the confirmation slips, moreover, served to lull purchasers of All State stock into a false sense of security and enabled the scheme to reach fruition.

The essential facts here are more like those in United States v. Sampson, 371 U.S. 75 (1962), and United States v. Pereira, *supra,* the holdings in which were reaffirmed in *Maze.* Here, as in *Pereira,* the mailings enabled appellants to realize the fruits of their scheme. Copies of the confirmation slips sent to Simon permitted Kelly, Andrews to receive a bank loan. In contrast, the mailings in *Maze* occurred after the illegal benefits already had been acquired. Moreover, as in *Sampson,* the mailings here of the confirmation slips were for the purpose of executing the scheme because they "were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place." United States v. Maze, *supra,* 414 U.S. at 403. See United States v. MacKay, 491 F.2d 616, 624 (10 Cir. 1974).

Receipt of the confirmation slips from Kelly, Andrews and the other brokers ostensibly legitimatized the fraud and provided it with the appearance of normality. Much like the mailing of the stock certificates in United States v. Goldberg, 401 F.2d 644, 647 (2 Cir. 1968), cert. denied, 393 U.S. 1099 (1969), failure to send the confirmation slips "would surely arouse a customer's suspicion and invite unwanted inquiry . . . ." Without the apparent propriety afforded by receipt of the confirmations, the brokerage firms and the victimized purchasers would have been on notice to investigate the trades. See

United States v. Schall, 371 F.Supp. 912, 925 (W.D.Pa.1974).

In short, we hold that the use of the mails for the transmission of confirmation slips in the instant case was "for the purpose of executing" the scheme in violation of 18 U.S.C. § 1341.[5]

We have considered appellants' other claims of error and find them to be without merit.

Affirmed.

---

5. Moreover, since this case involved a fraudulent scheme in connection with the sale of securities, we are not confronted with conduct "which the states should appropriately control and which they can control, effectively." United States v. Kelem, 416 F.2d

346, 347 (9 Cir. 1969), cert. denied, 397 U.S. 952 (1970). See United States v. Maze, 468 2d 529, 536 (6 Cir. 1972), aff'd, 414 U.S. 395 (1974). See generally United States v. Maze, *supra,* 414 U.S. at 405-08 (Burger, C. J., dissenting).