UNITED STATES of America

v.

Eddie Lee ALSTON a/k/a Eddie Lee, Appellant.

No. 77–2050.

United States Court of Appeals, District of Columbia Circuit.

Argued June 21, 1978.

Decided Oct. 22, 1979.

Allan Abbot Tuttle, Washington, D. C. (appointed by this Court), for appellant.

Whitney M. Adams, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Peter E. George, Brian W. Shaughnessy and Raymond Banoun, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before BAZELON, Senior Circuit Judge, and TUTTLE,[*] Senior Circuit Judge for the Fifth Circuit, and ROBB, Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge BAZELON.

Dissenting opinion filed by Circuit Judge ROBB.

BAZELON, Senior Circuit Judge:

Appellant was convicted by a jury on all counts of a thirty-five count indictment charging violations of both federal and District of Columbia statutes. The offenses stemmed from a scheme in which appellant would be paid to have an accomplice delete adverse information from, and add fictitious favorable information to, the computerized credit files of individuals who had difficulty obtaining credit. The altered credit records would then be sent for approval to various lending institutions, ultimately allowing these individuals to purchase automobiles or other items. The indictment, which was based on only eight credit transactions, included one count of conspiracy,[1] twenty-five counts of mail[2] and wire[3] fraud (counts 2–21 and 22–26), three counts of false statements to a federally insured bank (counts 27–29),[4] and six counts of D.C. felony false pretenses (counts 30–35).[5]

Certain of the multiple convictions under both federal and local law are contrary to congressional intent, requiring vacation of two or four convictions. Furthermore, the mailings at issue here cannot sustain convictions under the mail fraud statute because they occurred after the scheme to defraud had reached fruition. Finally, we vacate the sentences imposed on counts 27 through 29 of the indictment because they exceed the statutory maximum, and we remand for resentencing in accordance with 18 U.S.C. § 1014 and this opinion.[6] The remainder of the judgment of the District Court is affirmed.[7]

## I.

## MULTIPLE CONVICTIONS UNDER FEDERAL AND D.C. LAW

Each fraudulent credit transaction gave rise to multiple charges against Alston. In one transaction, an altered credit application and an altered credit report were sent by teletype (counts 13 and 15, wire fraud) to a federally insured savings bank (count 27, federal false statements), the applicant obtained an automobile loan from the bank (count 34, D.C. false pretenses), and the bank notified the dealer about the loan by telephone (count 20, wire fraud). In a second transaction, an individual applied for a home improvement loan from a federally insured bank (count 28, federal false statements), the credit bureau telecopied an altered credit record to the bank (count 14,

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. 18 U.S.C. § 371 (1976).

2. 18 U.S.C. § 1341 (1976).

3. 18 U.S.C. § 1343 (1976).

4. 18 U.S.C. § 1014 (1976).

5. 22 D.C.Code § 1301 (1973).

6. In imposing sentence, the District Court inadvertently referred to a copy of the indictment other than the renumbered indictment returned by the Grand Jury. All references in this opinion are to the renumbered indictment.

  The District Court imposed concurrent sentences of twenty months to five years on counts "1 through 29," and eight months to two years on counts "30 through 32." On counts "33 through 35," the District Court imposed sentences of ten months to three years, concurrent with each other but consecutive to the sentences imposed on counts 1 through 32. Counts 27 through 29 of the renumbered indictment, however, are federal false statements charges carrying a maximum sentence of two years; thus, the imposed sentences of five years on these counts must be vacated.

7. Appellant also argues that the trial court erred both in declining to poll the jury concerning a television news segment broadcast during the trial, and in allowing the prosecutor to cross-examine appellant concerning plea bargaining after the subject was raised by appellant on direct examination. In light of the record as a whole, including the various cautionary instructions to the jury with respect to these matters, we find no abuse of discretion by the trial court.

wire fraud), and the applicant obtained the loan (count 33, D.C. false pretenses). In four other transactions, applicants obtained automobile loans from a finance company (counts 30, 31, 32 and 35, D.C. false pretenses); in these transactions, wire fraud was charged for each time the automobile dealer telecopied a fraudulent application to the finance company (counts 2, 6, 9 and 11), the credit bureau telecopied an altered credit record to the lender (counts 3, 7, 10, 12 and 16), and the lender telephoned notice of loan approval to the dealer (counts 17, 18, 19 and 21). Mail fraud was charged each time the dealer mailed a completed sales contract to the lender (counts 22 through 26). Two remaining transactions, which involved unsuccessful attempts to obtain loans, triggered charges of federal false statements (count 29) and wire fraud (counts 4, 5, and 8).

This case raises problems that flow from an overkill of charges against a defendant. Pyramiding charges is particularly troublesome in the District of Columbia, where local and federal offenses can be joined in one indictment pursuant to 11 D.C.Code § 502 (1973).

Appellant argues that the multiple convictions under federal and local law denied him equal protection of the laws. Subsequent to the submission of this case for decision, this court has clarified the method by which we will analyze challenges to convictions under both federal and local law when the acts complained of arise within essentially the same transaction.[8] As explained in *United States v. Dorsey,*[9] the court must determine whether Congress intended to authorize multiple punishments under the particular statutes in question, and if so, whether the multiple punishments are constitutional. Therefore, we first consider whether Congress intended to impose multiple punishments for a single fraudulent transaction that violates both the D.C.

false pretenses statute and either the federal false statements statute or the federal mail and wire fraud statutes. Because of the similar purposes underlying the false pretenses and false statements statutes, we think that Congress did not intend multiple punishments in the circumstances presented here. On the other hand, we do discern a congressional intent to impose multiple punishments when an act or transaction violates both the false pretenses and the mail or wire fraud statutes.

### A.

█ The D.C. false pretenses statute, 22 D.C.Code § 1301 (1973), provides that "[w]hoever, by any false pretense, with intent to defraud, obtains from any person any service or anything of value," shall be subjected to imprisonment for up to three years. The federal false statements statute, 18 U.S.C. § 1014 (1976), provides that "[w]hoever knowingly makes any false statement or report, . . . for the purpose of influencing in any way the action of . . . any [federally insured] bank" can be imprisoned for not more than two years.

█ Congress clearly defined separate offenses in each statute: "each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *see Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Conviction on the local charge of false pretenses requires proof of the following elements: (1) a false representation; (2) knowledge of the falsity; (3) intent to defraud; (4) reliance by the defrauded party; and (5) obtaining something of value as a result of the false representation.[10] Conviction on the federal charge of false statements requires proof of (1) a material false statement, (2) to a federally insured finan-

---

8. *See United States v. Girst,* (D.C. Cir. No. 77–1604, decided Mar. 28, 1979); *United States v. Dorsey,* 192 U.S.App.D.C. 313, 591 F.2d 922 (1978).

9. 192 U.S.App.D.C. 313, 328, 591 F.2d 922, 937 (D.C. Cir. 1978).

10. *Fowler v. United States,* 374 A.2d 856, 859 (D.C.Ct.App.1977).

cial institution, (3) for the purpose of influencing the action of the institution.[11]

On their face, the local and federal statutes address different interests. The local statute focuses on the loss of anything of value, regardless of the identity of the victim. The federal statute is designed to protect specific financial institutions from fraud "in connection with loans or other similar transactions."[12] The federal offense is complete when the false statement is made; it does not require that the bank actually part with something of value.[13]

Yet some fraudulent loan applications might result in the grant of a loan, as occurred here,[14] resulting in separate criminal charges based on the same act or acts. In this case, proof of the federal false statements charge coincided with proof of the D.C. false pretenses charge, except for the element of *obtaining* the loan: the "false *statement*" knowingly made was a "false *representation*" knowingly made; the "*purpose* of influencing the action" of the bank was the "*intent* to defraud" the bank to obtain a loan; and a *bank* having federally insured deposits was the "*defrauded party*" acting in reliance on the *fraudulent application*. Thus, in the context of this case the two counts allege essentially the same offense.[15] Moreover, the three year maximum sentence under the D.C. false pretenses statute—applicable when a loan is actually obtained—appears analogous to an enhancement of the two years maximum sentence under the federal false statements statute—applicable when a false statement is made in an attempt to obtain a loan.

"[U]nless the intent of Congress is stated 'clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.'"[16] Since we find no such statement here, we apply "a corollary of the rule of lenity, an outgrowth of our reluctance to . . . multiply punishments absent a clear and definite legislative directive." *Simpson v. United States,* 435 U.S. 6, 15–16, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978). Accordingly, we direct vacation of the convictions under either counts 27 and 28 (false statements) or counts 33 and 34 (false pretenses) of the renumbered indictment, and appropriate resentencing of appellant.

### B.

■ We turn now to the multiple punishments under the federal mail or wire fraud statutes and the D.C. false pretenses statute. The mail[17] and wire[18] fraud statutes

11. *E. g., United States v. Potts,* 540 F.2d 1278, 1280 (5th Cir. 1976); *United States v. Savatino,* 485 F.2d 540, 544 (2d Cir. 1973), *cert. denied,* 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974).

12. H.R.Rep.No.1784, 91st Cong., 2d Sess. 66 (1970) (Conference Report); H.R.Rep.No.1556, 91st Cong., 2d Sess. 35 (1970) U.S.Code Cong. & Admin.News 1970, p. 5582; *see United States v. Lentz,* 524 F.2d 69, 71 (5th Cir. 1975), *rehearing en banc denied,* 526 F.2d 815 (5th Cir. 1976).

13. *See, e. g., United States v. Trexler,* 474 F.2d 369, 372 (5th Cir.), *cert. denied,* 412 U.S. 929, 93 S.Ct. 2759, 37 L.Ed.2d 157 (1973).

14. Only two of eight fraudulent applications did not yield loans in this case.

15. *Cf. United States v. Girst, supra* note 8, slip op. at 10 (transportation in interstate commerce of a firearm by a felon was, on the facts presented, a single offense which could not be punished under two federal statutes).

16. *United States v. Knight,* 166 U.S.App.D.C. 21, 509 F.2d 354, 361–62 (D.C. Cir. 1974), *quoting United States v. Canty,* 152 U.S.App.D.C. 103, 469 F.2d 114, 126–27 (D.C. Cir. 1972); *see United States v. Dorsey, supra* note 8, at 930.

17. 18 U.S.C. § 1341 provides in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or *for obtaining money or property by means of false or fraudulent pretenses,* . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, . . . or *knowingly causes to be delivered by mail* . . . any such matter or thing, shall be fined not more than $1,000 or *imprisoned not more than five years,* or both. [Emphasis added.]

18. 18 U.S.C. § 1343 provides in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, *or*

prescribe a penalty for *each use*[19] of the mails or wires "for the purpose of executing" a scheme to defraud or to obtain money or property by means of false pretenses. The focus of each statute is upon the misuse of the instrumentality of communication.[20] The interest to be protected under these federal statutes is clearly distinct from the property interest safeguarded by the local statute. Several courts have found that Congress intended to authorize multiple punishment under both the mail or wire fraud statute and other federal fraud statutes.[21] We conclude that Congress likewise intended violations of the mail or wire fraud statute to be separately punishable from violations of the local false pretenses statute.

Under the analytical framework established in *United States v. Dorsey, supra,* we next consider a constitutional inquiry:

> [E]ven if Congress intends to punish a defendant twice for violating two statutory provisions, the double jeopardy clause may bar such multiple punishment at a single trial if the two statutory pro-

visions constitute the "same offense" under *Blockburger.*

591 F.2d at 942.

■ The statutes in question clearly define separate offenses. Conviction for mail or wire fraud requires proof of only two elements: (1) a scheme to defraud, and (2) use of the mails or wires for the purpose of executing the scheme.[22] Conviction for false pretenses requires proof of several additional elements, and does not require proof of use of the mails or wires.[23] Since each requires proof of a fact that the other does not, they are clearly not the "same offense" under *Blockburger.* Thus, the double jeopardy clause does not prohibit multiple punishments under these statutes.

■ Appellant advances a second constitutional question in his claim that the multiple punishments denied him equal protection of the laws. This claim rests on an assumption that no defendant outside the District of Columbia would be subject to such double punishment because the Department of Justice's *Petite*[24] policy bars successive state-federal prosecutions for "the same act or acts."[25] The *Petite* policy

---

*for obtaining money or property by means of false or fraudulent pretenses,* . . . transmits or *causes to be transmitted by means of wire,* any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or *imprisoned not more than five years,* or both. [Emphasis added.]

19. *See, e. g., United States v. Joyce,* 499 F.2d 9, 18 (7th Cir.), *cert. denied,* 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974); *Henderson v. United States,* 425 F.2d 134, 138 n. 4 (5th Cir. 1970); *Hanrahan v. United States,* 121 U.S. App.D.C. 134, 348 F.2d 363, 366 (D.C. Cir. 1965), *cert. denied,* 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111 (1967).

20. The mail fraud statute and the wire fraud statute have both been construed as authorizing multiple convictions for multiple fraudulent uses. *See, e. g., United States v. Calvert,* 523 F.2d 895, 903 n. 6, 903–04 (8th Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *Henderson v. United States,* 425 F.2d 134, 138 n. 4 (5th Cir. 1970).

21. *See, e. g., United States v. Weatherspoon,* 581 F.2d 595, 600 (7th Cir. 1978) (mail fraud and false statements); *United States v. Mahler,*

579 F.2d 730, 731 & n. 2 (2d Cir.) (mail and wire fraud and securities fraud), *cert. denied,* 439 U.S. 991, 99 S.Ct. 592, 58 L.Ed.2d 666 (1978).

22. *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. Pollack,* 175 U.S.App.D.C. 227, 534 F.2d 964, 971 (D.C. Cir. 1976), *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976).

23. *See* text accompanying note 10 *supra.*

24. *See Petite v. United States,* 361 U.S. 529, 530, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960).

25. The policy, as originally stated by the Attorney General, is: "After a state prosecution there should be no federal trial for the same act or acts unless the reasons are compelling." U.S. Dep't of Justice Press Release at 1 (Apr. 6, 1959).

For a recent critical discussion of the *Petite* policy, *see* Note, *The Problem of Double Jeopardy in Successive Federal-State Prosecutions: A Fifth Amendment Solution,* 31 Stan.L.Rev. 477, 488–96 (1979).

was announced in 1959 in direct response to the Supreme Court's rulings that the Constitution does not prohibit state and federal governments from prosecuting a defendant for the same act.[26] As the Court recently explained in *Rinaldi v. United States,* 434 U.S. 22, 29, 98 S.Ct. 81, 85, 54 L.Ed.2d 207 (1977): "Although not constitutionally mandated, this *[Petite]* policy serves to protect interests which, but for the 'dual sovereignty' principle inherent in our federal system, would be embraced by the Double Jeopardy Clause."

Although we recognize that the *Petite* policy is of long standing and strictly enforced,[27] we conclude that it provides no basis for a successful equal protection claim here.[28] The *Petite* policy is not law, but rather an executive policy that permits of exceptions in the Attorney General's discretion.[29] The federal government remains free, under the Supreme Court's ruling in *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), to bring a federal prosecution subsequent to a state prosecution. Furthermore, neither the *Petite* policy nor the Constitution serves as a bar to a *state* prosecution and sentence following a federal prosecution and sentence.[30] It is possible, therefore, that defendants outside the District could be punished for both federal and state offenses arising from the same act or transaction.[31]

**26.** *See Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).

**27.** In *Rinaldi v. United States,* 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977), the Supreme Court held that federal courts must respect even a belated effort by the Justice Department to invoke the *Petite* policy. Defendant in *Rinaldi* was charged with state offenses and was then indicted for federal offenses stemming from a hotel robbery. He was convicted of the state charges and sentenced to six years' imprisonment. Subsequent to the state conviction, two federal trials were held, the first having ended in a mistrial. Defendant was convicted of the federal charges after a jury trial, and was sentenced to twelve years' imprisonment to run concurrently with the state sentence. On appeal from the federal judgment, defendant argued that his conviction violated the *Petite* policy. The Government agreed and asked the appellate court to remand the case so that the Government could move to dismiss the indictment. After remand, the District Court denied the Government's motion to dismiss and the Fifth Circuit *en banc* affirmed the lower court's ruling. But the Supreme Court vacated the judgment and ordered dismissal of the indictment. In so doing the Court stated that, although the expenditure of judicial and prosecutorial resources was by then irreparable, " 'no societal interest would be vindicated by punishing further a defendant who has already been convicted and has received a substantial sentence in state court. . . .' " *Id.* at 31, 98 S.Ct. at 86 (quoting Solicitor General).

**28.** *See United States v. Jones,* 174 U.S.App. D.C. 34, 527 F.2d 817, 821–23 (D.C. Cir. 1975).

**29.** If a United States Attorney believes that a dual prosecution would be appropriate under the "compelling reasons" standard, he or she can request approval from the Assistant Attorney General of the relevant Division and then from the Attorney General. *See* U.S. Dep't of Justice Press Release, *supra* note 25, at 1.

**30.** *See Rinaldi v. United States, supra* note 27, 434 U.S. at 29, 98 S.Ct. 81 (discussing with approval the "dual sovereignty" principle).

**31.** We note in passing that this case presents another example of "the injustice engendered by the unfettered and generally unguided exercise of that awesome power" of prosecutorial discretion. *United States v. Roberts,* 600 F.2d 815, 818 (D.C.Cir.1978), *rehearing en banc denied* (Apr. 30, 1979), *cert. granted,* —— U.S. ——, 100 S.Ct. 42, 62 L.Ed.2d 29 (1979). Statement of Bazelon, Circuit Judge, as to why he voted for rehearing en banc, slip op. at 7 n. 12.

The Supreme Court decisions in *Abbate* and *Bartkus, supra* note 26, holding that both the federal and state governments may prosecute a defendant for the same act or acts, are grounded in principles of federalism: where the laws of two "sovereigns" are violated, each government may have a legitimate reason for exercising its power of criminal prosecution. But this underlying rationale is absent where a defendant is prosecuted for violating laws of both the United States and the District of Columbia, since the laws emanate from one sovereign. Moreover, the Supreme Court and this court have long recognized that multiple punishments for essentially the same acts are unwarranted except "in instances of particular enormity, or where the public safety demanded extraordinary rigor." *Fox v. Ohio,* 46 U.S. (5 How.) 410, 434, 12 L.Ed. 213 (1847), *quoted with approval in Rinaldi v. United States, supra* note 27, 434 U.S. at 27–28, 98 S.Ct. 81; *see United States v. Knight, supra* note 16, 166 U.S.App.D.C. 21, 509 F.2d at 351. One may seriously question whether this case satisfies those criteria.

## II.

### INTENT TO DEFRAUD

■ Appellant also argues that the evidence did not establish the intent to defraud required for convictions under the federal mail and wire fraud statutes, and the local false pretenses statute. Conceding that the loan applications and credit records were falsified in order to allow the applicants to obtain credit, appellant nevertheless contends that there was no intent to defraud because the applicants intended to repay the loans and because retention of a security interest in the goods made the loans risk free.

■ The requisite intent under the federal mail and wire fraud statutes may be inferred from the totality of the circumstances and need not be proven by direct evidence.[32] Where, as here, the relevant documents contained material misrepresentations designed to induce an extension of credit that would not otherwise be made, the jury could reasonably infer intent to defraud.[33] In addition, the misrepresentations in each transaction were made on two key documents and by several people acting in concert, thus increasing the likelihood that the creditor would be deceived as to the nature of the financial risk involved. We believe these facts support the jury's verdict.

We also conclude that intent to defraud under the local false pretenses statute cannot turn solely upon an applicant's alleged intent to repay the loan. In these transactions, the probabilities of repayment by the borrower over the long term were less than the lender was led to believe. We are not unmindful that installment and other credit sales have created financial problems of substantial proportions for consumers and creditors alike. Many consumers are financially incapable of paying outstanding debts, despite good intentions.[34] Consequently, we cannot sanction a scheme whereby would-be borrowers fraudulently obtain loans that would not otherwise be available to them, regardless of whether they *might* have intended to repay so long as they were capable of doing so.

## III.

### USE OF THE MAILS

■ Finally, appellant asserts that his convictions on the five counts of mail fraud (counts 22–26) cannot stand. Each count arises from the mailing of an installment sales contract to the lender by the automobile dealer. Appellant argues that, because these mailings occurred after each applicant had taken possession of an automobile, they occurred after the scheme to defraud had reached fruition and were not sufficiently connected to the fraud to fall within the scope of the statute. If appellant is correct, then the convictions are invalid. *See United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974).

For conviction under the mail fraud statute, the mails must be used "for the purpose of executing" the fraudulent scheme, and not merely "as a result of" such scheme. *See id.* at 405, 94 S.Ct. 645. In *Kann v. United States*, 323 U.S. 88, 65 S.Ct.

Former Attorney General Rogers, in announcing the *Petite* policy, stated: "the mere existence of a power [to multiple punishments] . . . does not mean that it should necessarily be exercised." U.S. Dep't of Justice Press Release, *supra* note 25, at 2. Government prosecutors in the fifty states must show "compelling reasons" before federal punishments will be added to those of the state for the same act or acts. *See* note 29 *supra.* To the extent that this policy strikes a satisfactory balance between vindicating societal interests and avoiding unfairness to defendants, may it fairly be said that a similar policy is appropriate in the District of Columbia?

**32.** *See, e. g., United States v. Arnold*, 543 F.2d 1224, 1225–26 (8th Cir. 1976), *cert. denied*, 429 U.S. 1051, 97 S.Ct. 765, 50 L.Ed.2d 768 (1977).

**33.** *See id.* (material misrepresentations on a credit card application support inference of fraudulent intent).

**34.** For discussion of the current high level of consumer debt and the financial inability of many consumers to repay creditors, see NEWSWEEK, Jan. 8, 1979, at 46–54; TIME, Dec. 25, 1978, at 53.

148, 89 L.Ed. 88 (1944), the Supreme Court held that a scheme involving fraudulently obtained checks was completed once the checks were cashed. The Court reasoned that the defendants had intended to receive money, and that the money had been received "irrevocably" when they cashed the checks. Thus, when the payor banks mailed the checks to the drawee bank for collection, the mailings were not for the purpose of *executing* the scheme. *See id.* at 94, 65 S.Ct. 148. Similarly, in *Parr v. United States*, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), the defendants had obtained gasoline and other products and services by the unauthorized use of a credit card issued to their employer. The defendants were charged with mail fraud for having "caused" the sending of invoices to the employer and the sending of payments to the issuer. The Court held the convictions invalid on the ground that defendants' scheme reached fruition when the goods and services were received, because "[i]t was immaterial to them, or to any consummation of the scheme, how the [oil company] would . . . collect" its payment. *Id.* at 393, 80 S.Ct. at 1184. Most recently, in *United States v. Maze, supra,* the Court ruled that mailings of credit card sales invoices by merchants to a bank, and by the bank to the credit card holder, could not support mail fraud convictions because the defendant, who had stolen the credit card, had irrevocably received the goods and services before the mailings occurred. Nor did the subsequent mailings constitute " 'deliberate, planned use of the mails' " by

the perpetrator to aid the continuation or concealment of the fraudulent scheme. 414 U.S. at 403, 94 S.Ct. at 650 (quoting *United States v. Sampson,* 371 U.S. 75, 80, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962)). Thus, the mail fraud statute was inapplicable to the mailings.

Appellant here argues that, since the object of the scheme was to obtain an automobile, it reached fruition once the car was driven off the dealer's lot. The Government, on the other hand, contends that the object was to obtain credit and use of the car *over the loan period.* Under this theory, the mailing of the conditional sales contract *after* the loan applicant had obtained credit approval and a car would be within the coverage of the statute.

We believe that the scheme to defraud reached fruition before the mailing of each conditional sales contract. The dealer's mailing of the contract, which contained the terms of payment and an assignment of the contract to the lending institution, neither furthered the objective of the scheme (i. e., obtaining a loan for the applicant) nor served to conceal the fraudulent representations.[35] Although the signing of the installment contract may have been a contemplated step toward obtaining possession of the car, we believe the subsequent *mailing* was immaterial to the fraud perpetrated upon the lender by the borrower.[36] We therefore vacate the convictions on counts 22 through 26 on the grounds that the mailings were not "for the purpose of executing" the scheme to obtain loans.[37]

---

**35.** *See United States v. Maze,* 414 U.S. at 402–03, 94 S.Ct. 645.

**36.** *See id.* at 400, 94 S.Ct. 645 (quoting *Kann v. United States, supra,* 323 U.S. at 94, 65 S.Ct. 148).

We believe it unnecessary to decide the exact point at which this scheme culminated, whether it be when the lender approved the loan or when the installment sales contract was signed. We only decide that the mailings at issue were too remote to be within the intended coverage of the mail fraud statute.

We also note that, under the Government's theory, even the regular mailing of each installment payment could constitute a violation of the mail fraud statute. We decline to open the

door to such a result, which would impose greater criminal penalties on those who repay loans than on those who intentionally default.

**37.** We recognize that vacating these convictions will not reduce the length of appellant's maximum sentence, since the mail fraud sentences were concurrent with the remaining sentences on the conspiracy and wire fraud counts. However, this does not bar appellate review and, when necessary, correction. *See Benton v. Maryland,* 395 U.S. 784, 787–91, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *United States v. Knight,* 166 U.S.App.D.C. 21, 509 F.2d 354, 359 (D.C.Cir. 1974); *United States v. Canty,* 152 U.S.App.D.C. 103, 469 F.2d 114, 126 & n.14 (D.C.Cir. 1972); *United States v. Hooper,*

## IV.

For the foregoing reasons, we vacate the judgment of the District Court with respect to counts 22 through 29 and counts 33 and 34 of the indictment, and we remand for resentencing in accordance with 18 U.S.C. § 1014 and this opinion. The remainder of the judgment is affirmed.

*It is so ordered.*

ROBB, Circuit Judge, dissenting in part:

In my opinion there was sufficient evidence to show that the mailings of the conditional sales contracts to the lenders were in furtherance of the scheme to defraud. Accordingly I would affirm the conviction of Alston on counts 22 through 26. I concur in the other holdings in the court's opinion.[1]

The purchaser of an automobile was required to apply for credit from a lender and to be approved before a dealer would agree to a conditional sales contract. When the lender gave oral approval of the loan application a contract was sent through the mails which provided for assignment of the dealer's rights and warranted that the purchaser's representations in the credit application were true. Receipt of the written contract through the mails was a regular, contemplated and necessary step in the consummation of the loan transaction. These facts were sufficient to demonstrate that the mailings were in furtherance of the scheme to defraud, within the meaning of the statute.

The purpose of the scheme to defraud was to obtain credit and use of an automobile over the loan period. If any of the representations in the contract with respect to the purchaser's financial history thereafter proved to be false the lender was free to rescind the loan and demand immediate payment. In short, mailing of the written contracts was an essential step in the execution of the scheme to defraud. *See United States v. Marando,* 504 F.2d 126, 129 (2d Cir.), *cert. denied,* 419 U.S. 1000, 95 S.Ct.

139 U.S.App.D.C. 171, 432 F.2d 604, 605 & n.3 (D.C.Cir. 1970).

317, 42 L.Ed.2d 275 (1974); *United States v. Owen,* 492 F.2d 1100, 1103 (5th Cir.), *cert. denied,* 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974); *United States v. Eskow,* 422 F.2d 1060 (2d Cir.), *cert. denied,* 398 U.S. 959, 90 S.Ct. 2174, 26 L.Ed.2d 544 (1970).

Furthermore in my opinion the mailing of the written contracts promoted concealment of the fraud and therefore was within the condemnation of the statute. *United States v. Sampson,* 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962); *United States v. Pollack,* 175 U.S.App.D.C. 227, 534 F.2d 964 (1976), *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1977); *United States v. Eskow, supra,* 422 F.2d at 1069.

1. I do not subscribe to the dicta in n.31.