## UNITED STATES of America

### v.

### Mary TREADWELL.

### Crim. No. 82–45.

United States District Court, District of Columbia.

April 26, 1983.

On Motion to Dismiss May 2, 1983.

On Motion to Sever June 8, 1983.

---

William D. Pease, Stephen Spivack, Melanie G. Dorsey, Asst. U.S. Attys., Washington, D.C., for plaintiff.

John W. Nields, Jr. and Robert G. Joseph, Howrey & Simon, Washington, D.C., for defendant.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

This case is before the Court on the motion of the remaining defendant, Mary Treadwell,[1] to dismiss Counts 18–22 and 24 of the indictment.[2]

The indictment charges Treadwell with conspiracy, false statements, mail fraud, wire fraud, and tax evasion. It is alleged that Treadwell, as a director and/or chief executive officer of several organizations including P.I. Properties, Inc.,[3] entered into

1. Three other defendants named in the indictment, Joan Booth, Ronald Williams and Robert E. Lee, have entered pleas of guilty to some of the charges in the 30-count indictment. Williams has been sentenced and Booth and Lee are pending sentence. On the government's motion the indictment was dismissed as to the fifth defendant, Charles W. Rinker, Jr.

2. The other motions presently pending before the Court will be addressed separately.

3. The indictment alleges that Treadwell was also a director and/or chief executive officer of Pride International, Inc., Sticks and Stones, Inc., Youth Pride Economic Enterprises, Inc., Pride Economic Enterprises Special Police,

a conspiracy with the other defendants, in which the object was "for the defendants to unjustly and illegally enrich themselves and the other businesses which they directed and controlled, by using P.I. Properties to acquire Clifton Terrace [Apartments] and thereafter to misappropriate, misapply, divert and steal monies and assets from Clifton Terrace and the other housing projects which P.I. Properties owned or managed and to hide, conceal and cover up such misappropriation, misapplication, diversion and theft.

Counts 18–22 and 24 of the indictment charge defendant Treadwell with mail fraud, 18 U.S.C. § 1341. According to the government's theory of the case, defendants used money misappropriated from Clifton Terrace to purchase property in the District of Columbia. The mail fraud counts arise from the mailing of real estate deeds by the Recorder of Deeds for the various parcels of property. The government further alleges that defendants then improved the properties with the proceeds of later misappropriations from Clifton Terrace. *See, e.g.,* Overt Acts 20, 38.

Defendant Treadwell argues that the mailing occurred after defendants had acquired dominion over any misappropriated funds. Since the alleged scheme had been achieved prior to the mailings they were not sufficiently related to the fraud to fall within the scope of the statute.

■ To establish a violation of 18 U.S.C. § 1341 the government must prove that the mails were used " 'for the purpose of executing' the fraudulent scheme, and not merely 'as a result of' such scheme." *United States v. Alston,* 197 U.S.App.D.C. 276, 283, 609 F.2d 531, 538 (1979), *cert. denied,* 445 U.S. 918, 100 S.Ct. 1281, 63 L.Ed.2d 603 (1980), *quoting United States v. Maze,* 414 U.S. 395, 405, 94 S.Ct. 645, 651, 38 L.Ed.2d 603 (1974). In *Alston* defendants' scheme involved the falsification of credit records of individuals who had difficulty obtaining credit for the purpose of enabling them to purchase automobiles. The mail fraud allegations stemmed from the mailing of installment sales contracts to the lender by the automobile dealer. The court concluded:

> We believe that the scheme to defraud reached fruition before the mailing of each conditional sales contract. The dealer's mailing of the contract, which contained the terms of payment and an assignment of the contract to the lending institution, neither furthered the objective of the scheme (i.e., obtaining a loan for the applicant) nor served to conceal the fraudulent representations. Although the signing of the installment contract may have been a contemplated step toward obtaining possession of the car, we believe the subsequent *mailing* was immaterial to the fraud perpetrated upon the lender by the borrower.

197 U.S.App.D.C. at 284, 609 F.2d at 539 (footnotes omitted).[4]

---

· Pride Environmental Services, Inc., T. Barry Associates, Inc., and Youth Pride, Inc.

**4.** In a recent opinion the First Circuit reviewed the case law governing when a mailing will be found to be in furtherance of a fraudulent scheme, and said:

> The law is in some confusion regarding when mailings will be found to have been in furtherance of a fraudulent scheme. On one hand, the Supreme Court has made clear that for mailings to be sufficiently closely related to a fraudulent scheme to support mail fraud convictions, "[i]t is not necessary that the scheme contemplate the use of the mails as an essential element." (citation omitted). All that is required is that the mailings be "incident to an essential part of the scheme." *Id.* On the other hand, the Court has indi-

cated that the success of the scheme must be dependent in some way on the mailings, either in obtaining the desired object or in avoiding or delaying detection of the scheme. (citations omitted).

> Some courts have read the Supreme Court's requirements broadly, accepting as a basis for mail fraud convictions any mailings that can be said to be "normal concomitant[s] of a transaction that is essential to the fraudulent scheme." (citations omitted). Other courts have been more restrictive, rejecting mailings that "neither furthered the objective of the scheme ... nor served to conceal the fraudulent representations." *See United States v. Alston,* 609 F.2d 531, 539 (D.C.Cir.1979). (other citations omitted)

The government relies on the fact the defendants used money misappropriated from Clifton Terrace to improve the properties after the deeds were mailed to establish that the scheme was ongoing at the time of the mailings. The government also contends that the object of the scheme went beyond misappropriating money from Clifton Terrace, and included the investment of the proceeds for the purpose of building a business empire.

■ The Court finds that the continuing investment of misappropriated funds into the properties does not link the mailings to the alleged fraudulent scheme. Each instance in which money was invested in the properties was merely further use of proceeds obtained " 'as a result of' such scheme." *United States v. Alston, supra* p. 82. The mailings did not further the objectives of the alleged scheme, did not conceal the alleged fraudulent representations, and did not ensure the success of the alleged scheme.

Moreover, the government's characterization of the scheme as encompassing the objective of obtaining money for the purpose of building a business empire gives the scheme greater breadth than the statute countenances. In *United States v. Maze,* defendant repeatedly used someone else's credit card, and each time it was used the establishments to which the credit card was presented transmitted the invoices by mail to the appropriate bank. According to the government's assertions here this should have been viewed as an ongoing scheme to fraudulently obtain goods and services. Nevertheless, the Court held that since the mailings did not serve "the purpose of executing such scheme", no mail fraud had occurred. 414 U.S. at 405, 94 S.Ct. at 651. Likewise, the use of the proceeds to purchase property, and the mailing of the real estate deeds, were not sufficiently connected to the alleged scheme to defraud to constitute a violation of the statute.

*United States v. Greenleaf,* 692 F.2d 182, 186 (1st Cir.1982), *cert. denied,* —— U.S. ——, 103

Finally, the government cites *United States v. Buckley,* 689 F.2d 893 (9th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983), as authority to uphold the sufficiency of the indictment. In that case the Court held that it was unknown whether the government had enough evidence to substantiate its allegations. *Id.* at 900. In this case, however, even construing the facts in a light most favorable to the government, it is the government's theory that fails, not the weight of its evidence. For this reason dismissal of the mail fraud counts is warranted.

In view of the above, it is hereby

ORDERED that counts 18–22 and 24 of the indictment are dismissed as they relate to defendant Mary Treadwell.

## ON MOTION TO DISMISS

This comes before the Court on defendant Treadwell's motion to dismiss Count One of the indictment or, in the alternative, to require the election of separate conspiracies, and her motion to sever Counts 26–28 of the indictment. After giving careful consideration to the motions, the oppositions thereto, and the arguments of counsel, the Court concludes, for the reasons to be stated in a Memorandum to be filed, that both motions should be denied.

It is hereby

ORDERED that defendant's motion to dismiss Count One or in the alternative to require an election, is denied, and it is further

ORDERED that the motion to sever Counts 26–28 is denied.

## ON MOTION TO SEVER

This case is presently before the Court on the motion of defendant Mary Treadwell for severance of tax related counts from the indictment lodged against her. This motion is opposed by the Government.

S.Ct. 1523, 75 L.Ed.2d 946 (1983).

Defendant, together with four other persons, Charles Rinker, Robert E. Lee, Joan Booth and Ronald Williams, was indicted on February 22, 1982. The indictment charges all defendants with conspiracy, false statements, mail fraud and wire fraud. In addition, defendants Treadwell and Booth were charged with tax evasion. The Government has since dismissed the charges against Rinker as a result of a polygraph examination. Defendants Williams, Lee and Booth have entered pleas of guilty to certain charges.

The indictment consists of 30 Counts, along with 50 Overt Acts which date from approximately May 13, 1974 to July 27, 1978. The Government avers that the object of the conspiracy was "for defendants to unjustly and illegally enrich themselves and the other businesses which they directed and controlled, by using P.I. Properties to acquire Clifton Terrace and thereafter to misappropriate, misapply, divert and steal monies and assets from Clifton Terrace" and the other housing projects which P.I. Properties owned. *See* Indictment at 5.

### I

Defendant moves this Court pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure (hereinafter Rule 8 and Rule 14) for an Order severing Counts 26 through 28 (hereinafter "tax counts") from Counts 1 through 25 (hereinafter "substantive counts" or "non-tax counts") on the grounds of both improper and prejudicial joinder. Count One of the indictment charges defendant Treadwell with conspiring with others to defraud the U.S. Department of Housing and Urban Development (HUD) by stealing and misappropriating funds of Clifton Terrace Apartments and then concealing these matters from HUD. Counts 2 through 25 charge defendants with false statements and mail fraud committed as part of the conspiracy. Finally, Counts 26 through 28 charge defendant Treadwell with "knowingly and willfully attempt[ing] to evade and defeat" income

tax due and owing to the United States for years 1976, 1977 and 1978. *See* Indictment at 29–31.

In support of her motion to sever, defendant argues, *inter alia,* that:

> Because of the relatively small amount of proof common to both the tax and nontax counts, and because of the serious prejudice to Mrs. Treadwell's defense of the conspiracy count, which would result from proof of failure to file tax returns, the personal tax counts may not be properly joined with the conspiracy and related counts under Federal Rule of Criminal Procedure 8(a). Even if the counts had been properly joined they would be subject to severance under Rule 14, Fed.R. Crim.P.

*See* Motion of Defendant Mary Treadwell To Sever Counts 26–28 (Defendant's Motion) at 3. Defendant further contends that "[a]lthough some of the income Mary Treadwell received in 1976 through 1978 was related to work she did for Clifton Terrace, the two sets of charges present entirely different issues" and will require different evidence. *Id.* at 2.

The gravamen of defendant's objections to joinder is that the Government has failed to adequately allege that the conspiracy, mail fraud, wire fraud, false statements and the individual personal tax counts were "part of the same act or transaction or . . . the same series of acts or transactions as found in Rule 8(a). The personal tax offenses, she contends, are separate, distinct and "largely unrelated." Defendant asserts further that severance is warranted because: 1) her tax deficiency and failure to file a timely tax return is conceded; 2) commission of the conspiracy offenses neither depended upon nor necessarily lead to the failure to file an income tax return; 3) the underlying conspiracy did not generate the income tax violations; 4) there is little, if any commonality of proof; 5) the tax evasion charge can be proved without establishing the conspiracy; and 6) no substantial overlap in proof is involved.[1]

---

1. *See* Defendant's Motion at 17. Similar arguments were made by defendant in *Baker v.*

*United States,* 131 U.S.App.D.C. 7, 401 F.2d 958 (1968), *cert. denied,* 400 U.S. 965, 91 S.Ct.

The Government takes a contrary view. The Government asserts, in support of its opposition to defendant's motion to sever, that evidence presented at trial will demonstrate the following:

Among the means used by defendant to carry out the conspiratorial scheme, were to represent falsely to IRS that P.I. Properties was a non-profit organization organized 'exclusively for charitable and educational purposes,' that 'no part of the net earnings of [P.I. Properties would] inure to the benefit of any . . . employee [or] director,' that the business activities of her other profit-motivated businesses were 'unrelated to those envisioned for P.I. Properties, . . . .' Contrary to those representations, the indictment alleges that defendant and her co-conspirators, *inter alia,* used Clifton Terrace funds to benefit themselves personally as well as their other businesses; they entered into self-dealing contracts and agreements between P.I. Properties and their other businesses; they used tenant security deposit escrow monies as collateral for loans to benefit themselves and their businesses; they laundered monies through various business accounts to hide income to themselves and the misapplications of project funds; they created false books and records and destroyed various business records which would reveal to HUD or IRS their illegal profiteering; and they made false statements and reports to both HUD and IRS to conceal and to cover-up their profiteering.

*See* United States' Opposition To Defendant Treadwell's Motion To Sever Counts 26–28 ("Government's Opposition") at 4–5 (citations omitted).

367, 27 L.Ed.2d 384 (1970). *See also Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

2. The Government alleges that defendant gave instructions that these monies were not to be reported to IRS, either on forms 1099 or upon audit of personal tax returns. Defendant allegedly filed falsified IRS Forms 4868 in an effort to conceal income from sources other than Youth Pride. It is further alleged that defendant failed to include some of the income

In support of the foregoing charges, the Government states that it will present evidence which shows the flow of money out of Clifton Terrace to the defendant personally, to her other businesses, and from those businesses to her personally. The Government also avers that it will present evidence of instructions given by defendant to subordinates to create "false and misleading business record entries to hide the misapplication of funds and of instructions not to report to IRS monies going to the co-conspirators as 'bonuses' or 'renumeration' [sic]." [2]

More specifically with regard to the personal tax counts, the Government asserts that it will present evidence showing that during the years 1976 through 1978, years which defendant is charged with personal tax evasion, defendant had income of approximately $193,000. According to government records, W–2 forms filed with IRS show that defendant received income of approximately $79,000. The Government vigorously argues that defendant's "receipt of over $75,000 of the approximately $114,000 in unreported income was the direct result of her control of the business and finances of P.I. Properties, Pride Economic Enterprises Special Police, and Sticks and Stones—organizations whose activities were at the center of the conspiratorial plans." *See* Government Opposition at 6.

## II

As alluded to above, defendant Treadwell alleges misjoinder of tax counts pursuant to Fed.R.Crim.P. 8(a) and, alternatively, assuming proper joinder, that she is prejudiced thereby within the meaning of Fed.R. Crim.P. 14.[3]

received from P.I. Properties and Sticks and Stones when her concededly delinquent taxes were filed in 1980.

3. Initial consideration must be given to Rule 8(a) contentions in that Rule 14, which addresses prejudicial joinder, only comes into play after it has first been determined that joinder is permissible under Rule 8. *See United States v. Graci,* 504 F.2d 411, 413 (3rd Cir.1974); *see also United States v. Winchester,* 407 F.Supp. 261 (Del.1975).

Rule 8(a) permits two or more offenses to be joined in a single indictment or information if the offenses charged are: 1) of the same or similar character; 2) based on the same act or transaction; or 3) based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Rule 8(a) authorizes joinder of two or more offenses charged against a single defendant and applies to cases in which severance is sought by only one defendant.[4] Rule 8(b) applies to cases involving multiple defendants and offenses. In that defendant Treadwell is the only defendant yet facing charges in the instant case, Rule 8(b) is inapplicable.

The term "similar character" found in Rule 8(a) has been construed to mean nearly corresponding, resembling in many respects, somewhat alike, or having a general likeness. *See United States v. Werner,* 620 F.2d 922, 926 (2d Cir.1980). The term "transaction" has been interpreted to comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. *See United States v. Isaacs, supra,* 493 F.2d at 1158 (S.D.N.Y. 1974). Offenses have been held to be "connected together" when there is commonality of proof. *Id.* at 1159. ·

Rule 14 provides that if "a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trial of counts, grant a severance of defendants or provide whatever other relief justice requires."

■■■ In determining whether offenses should be tried separately, the principal consideration "is whether joinder is so manifestly prejudicial that it outweighs the dominant concern with judicial [and prosecutorial] economy"; the primary purpose of joinder is to insure that a given transaction need only be proved once. *See United States v. Brashier,* 548 F.2d 1315, 1323 (9th

Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977); *see also Baker v. United States, supra,* 401 F.2d at 971. Absent substantial prejudice to the accused, offenses properly joined under Rule 8 should be jointly tried to "conserve judicial resources, [alleviate] the burdens on citizens serving as jurors, and [to avoid] the necessity of having witnesses reiterate testimony in a series of trials." *United States v. Clemente,* 494 F.Supp. 1310, 1325 (S.D.N. Y.1980) (citations omitted).

■■■ Judicial policy favoring joint trials is particularly strong where, as in the case at bar, the offenses charged persuasively intimate a "common scheme or plan. . . . " *Id.; United States v. Girard,* 601 F.2d 69, 72 (2d Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). Joinder is the rule rather than the exception and the burden is upon a moving defendant to show facts demonstrating that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial. *See United States v. Armstrong,* 621 F.2d 951 (9th Cir.1980); *see also United States v. Rucker,* 586 F.2d 899 (2d Cir.1978).

■■■ The Court concludes that defendant's motion for severance of the tax counts and the remaining substantive counts pursuant to Rules 8(a) and 14 must be denied. Defendant has failed to meet the burden of demonstrating that she will be so severely prejudiced by joinder that she would in effect be denied a fair trial. The Government asserts that all the offenses charged are factually related; and particularly, that the tax counts arose directly out of the acts and transactions involved in the substantive counts.

The Government has proffered that it will prove at trial that the money alleged to have been fraudulently obtained by defendant constitutes the unreported income in the tax counts; and accordingly, it appears that the evidence necessary to prove the conspiracy charges and the tax charges will

---

4. *See United States v. Isaacs,* 493 F.2d 1124, 1158 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974).

essentially be the same. The Government must prove that defendant had the requisite *mens rea* to commit either offense charged. *See i.e., Spies v. United States,* 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). That is to say that in order for the United States Government to prove the defendant guilty of tax evasion and the filing of false tax returns, it will have to show that defendant received income from a "common scheme or plan" which was intentionally or willfully not reported to HUD or IRS. *Accord Baker v. United States, supra,* 401 F.2d at 971; *see also United States v. Vignola,* 464 F.Supp. 1091 (E.D.Pa.1979).[5] In any event, the Court holds that the tax evasion charges are part and parcel of the substantive conspiracy charges. If the charges in the instant case were severed, the separate juries would be confronted with basically the same evidence in each trial, resulting in an unnecessary waste of judicial, prosecutorial and civic effort, resources and time.

The Court finds that the instant facts are distinguishable from the facts found in *United States v. Halper,* 590 F.2d 422 (2d Cir.1975), upon which defendant principally relies in her motion. There, the Court of Appeals reversed a conviction on the grounds that Medicaid fraud indictment and income tax evasion indictment should not have been tried together where "the government conceded that the sums charged in the tax indictment were not the same funds embraced in the Medicaid fraud indictment." *Id.* at 429. In this case, the Government has vigorously argued that the income which underlies the tax charges against defendant represents the proceeds of the criminal activity involved in the other offenses charged in the indictment. Thus, the Court finds that severance must be denied in the case at bar.

---

**5.** The Court in *Vignola,* 464 F.Supp. 1091 (E.D. Pa.1979), also held: "It is not at all uncommon for both an income generating offense and for a tax offense associated with the non-reporting of that income to be joined. Such cases are legion." *Id.* at 1103.