**SMITH  v.  UNITED STATES.**

No. 12028.

United States Court of Appeals
Sixth Circuit.

May 31, 1954.

---

Walker Percy, Memphis, Tenn., Troy W. Tomlin, Somerville, Tenn., on brief, for appellant.

Edward N. Vaden, Memphis, Tenn., Millsaps Fitzhugh, Edward N. Vaden, Memphis, Tenn., Warren Olney III, Asst. Atty. Gen., Washington, D. C., on brief, for appellee.

Before ALLEN, McALLISTER, and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

Appellant, a Chief Petty Officer in the United States Navy, was indicted on a charge that he knowingly presented a false and fraudulent claim for travel allowance for his dependents to the Disbursing Officer of the United States Naval Air Station at Millington, Tennessee, on December 4, 1952, in violation of Title 18 U.S.C.A. § 287. On a trial before a jury, he was convicted, and from the judgment, he appeals, claiming that the government did not discharge the burden of proving the departmental regulations relating to allowances for travel for dependents; that there was no substantial evidence to sustain appellant's guilt beyond a reasonable doubt; and that the trial court erred in rulings upon evidence, and in its instructions to the jury.

Title 18 U.S.C.A. § 287, under which the indictment was returned, provides:

"Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

In January 1951, appellant was stationed in California, and at that time, his wife and four year old daughter made a trip from Memphis, Tennessee, to San Diego to take up residence with him at that place. However, appellant and his wife had marital difficulties and she left him, in July 1951, taking their daughter with her. In September 1951, appellant, who had prior notice that he was going to be assigned to sea duty, received such orders to a seaplane tender, and later, in March 1952, was ordered to Korean waters. After this service, he was ordered to report to the Naval Air Base at Millington, Tennessee, where he arrived November 28, 1952. On the same day, he filled out an application for reimbursement for expenses incident to the travel of his dependents, setting forth therein that his wife, his daughter, and his stepson had departed from Coronado, California, on November 23, 1952, and that they had arrived in Memphis, November 28, 1952. At the same time, appellant signed and filed a voucher claiming travel money for such dependents in the sum of $314.85, and on December 4, 1952, he presented the application and voucher to the Disbursing Officer at the Naval Air Station and re-

ceived the above named sum by check which he cashed, some of the proceeds of which he gave his wife, and the rest, he used personally.

In the documents which appellant filed with the government to secure the travel money above mentioned, he specifically set forth the names of the dependents making the trip for which the travel expense was claimed, and therein included his stepson, aged fifteen years. The boy had never been in California. The address which appellant gave as the one where his wife, daughter, and stepson were living when he received his orders for sea duty was not the address where they were living at that time. His wife and daughter had already left California the year before, and had never lived at the given address. The address which appellant gave was the one at which he himself had been living, after his wife left him, and to which he returned after his sea duty. Shortly before his trial, appellant voluntarily gave a detailed statement to a Special Agent of the Federal Bureau of Investigation, setting forth the above facts, and concluding: "I realize that the statement that I filed on December 4, 1952, was a false one." He further set forth in the statement: "The application listing my stepson as living in Coronado with us is false." On his trial, however, appellant testified that at the time he made application for travel allowance for his dependents, he did not know that his stepson had not made the trip back from California, but believed the statement, in this regard, in the application to have been true.

In his testimony on the trial, which was undisputed, appellant stated that he had made an allotment of his pay for his wife, daughter, and also for his stepson, as his dependents, in the amount of $185 a month, which they received during his period of service, and that they were receiving this same amount at the time of the trial—and, presumably, they are still receiving it. He further testified that after his wife and daughter joined him in California in January 1951, he

secured a birth certificate from Tennessee, verifying the age of his stepson, in order that the boy should be listed as one of his dependents entitled to an allotment of his pay for support. He testified that his wife had told him, in the early part of 1951, that the boy would join them in California after he had finished his school term in June 1951. Appellant further testified that when his wife left him in July 1951, taking with her their young daughter, he did not know where she had gone; that he did not hear from her again until April 1952, when, in Japan, he received the first letter from her after she had left him; and that he, then, learned for the first time that she was in Tennessee. He thereafter applied to the Navy for a change of orders that he might be sent back to Tennessee, and subsequently, received such orders and arrived back in that state on November 28, 1952. Appellant testified that at the time he made his application for travel allowance for his dependents, he assumed that his stepson had gone to California after the June vacation, as his wife had planned to have him do, and as she had informed appellant; and that, although he did not know that the boy had been in California, he assumed that to be the fact, and believed that when his mother had returned to Tennessee the boy had returned with her. This is not as improbable as it would appear on first blush, for appellant had allotted a portion of his pay to his stepson, and during all of this time after his wife's trip to California and after her return to Tennessee, he was supporting his wife, daughter, and stepson by the allotment of pay which he had provided for them.

Appellant testified that he did not learn that the boy had not gone to California until three weeks after he had received the travel pay which, for his stepson, amounted probably to something less than $100; and he stated that his first information that the boy had not been in California with his mother and returned to Tennessee with her, came at

the time when he called on his wife just before Christmas of 1952. It was, perhaps, appellant's application for travel pay for his stepson that, more than anything else, influenced the jury in arriving at a verdict of guilt—if the questions asked appellant by one of the jurors could be said to serve as an indication. The background of the juror's questions was as follows: It appears from appellant's undisputed testimony that before he left San Diego for Tennessee, he applied to the Navy for his travel expenses for the trip and received them. When he arrived in Tennessee and reported for duty, the Navy told him to accept the travel pay again under a procedure by which it would be deducted from his pay if, within fifteen days, he did not file a claim for reimbursement. Appellant testified that he tried to return, to the Navy paymaster, the money which they insisted on paying him for travel expenses at the end of his trip since he had already collected such expenses before he made the journey, and that the paymaster refused to accept the money on the ground that under Navy regulations, the sum would later be deducted from his pay. Appellant's testimony in this regard was confirmed by a Navy officer, called as a government witness, who testified that the travel money was given to appellant "before and after he made the trip," with a subsequent deduction from pay. Reverting to the juror's question: When the juror asked appellant whether he had offered to reimburse the Navy for the travel expense for his stepson, after appellant had found that the boy had not made the trip, he replied that he had not "because I had already tried to get them to take back the advance before, and they wouldn't take it back for my own travel." It is true that the failure to reimburse the government subsequent to December 23, 1952, after appellant had learned that his stepson had not made the trip, did not prove his intention to present a fraudulent claim on December 4; but the retention of the money—even in view of the seemingly peculiar regulations of the Navy as to appellant's own travel allowance—certainly was evidence to be considered by the jury on the question of appellant's guilt of the offense charged.

Appellant, in his defense, relies upon Title 37 U.S.C.A. § 253, which provides:

"Transportation in kind for dependents on change of station; monetary payment in lieu of transportation; baggage and household effects; definition of 'permanent station'

"(c) In addition to the allowances authorized above, under such conditions and limitations and for such ranks, grades, or ratings and to and from such locations as may be prescribed by the Secretaries concerned, members of the uniformed services when ordered to make a change of permanent station shall be entitled to transportation in kind for dependents or to reimbursement therefor, or to a monetary allowance in lieu of such transportation in kind at a rate to be prescribed  *  *."

Travel by dependents in compliance with the foregoing statutory provision would entitle a member of the uniformed services to a monetary allowance therefor in lieu of transportation in kind; and, in the instant case, appellant would have been entitled to a monetary allowance in lieu of transportation for his wife and daughter from California to Tennessee, provided the travel by such dependents had been in compliance with the statute. However, such allowances, in accordance with the foregoing provision of the statute, are authorized only when a member of the uniformed services is ordered to make a change of permanent station. In this case, appellant's wife and daughter left California for Tennessee in July 1951. Appellant was then in California. He had not received orders for a change of permanent station until late in September 1951. Since allowances for travel by dependents are authorized, under the foregoing

provision of the statute, only when a member of the uniformed services is ordered to make a change of permanent station, and since the travel to Tennessee by appellant's wife and daughter took place before that time, no monetary allowance in lieu of transportation for such dependents was authorized, and appellant would not be entitled to it, under the quoted portion of the statute.

However, Title 37 U.S.C.A. § 253(c), also provides: "When orders directing a change of permanent station for the member concerned have not been issued, or when such orders have been issued but are of such a nature that they cannot be used as authority for transportation of dependents * * *, the Secretaries concerned may, nevertheless, authorize the movement of the dependents and baggage and household effects and prescribe transportation in kind, reimbursement therefor, or a monetary allowance in lieu thereof as authorized in this subsection, as the case may be, only under unusual or emergency circumstances, including but not limited to * * * (3) circumstances when such members are serving * * * on sea duty."

The foregoing could justify the monetary allowance in lieu of transportation of appellant's dependents from California to Tennessee, even without the issuance of orders directing a change of permanent station for appellant, provided it was authorized by order or by a regulation. There is, however, no affirmative proof of such authorization in this case. In any event, appellant's wife and daughter did travel back to Memphis from San Diego, and he, after his service in Korea, returned to San Diego and was ordered to make a change of permanent station to Tennessee. If the wife and daughter had waited until appellant returned to San Diego and had received his orders to report to the Naval Air Station at Tennessee, or even if he had not received such orders but they had made the trip by virtue of some regulatory authority, there is no question but that appellant would have been entitled to the monetary allowance in lieu of their transportation, as they actually traveled from California to Tennessee.

Appellant testified that he believed that no matter when his dependents made the trip from California to Tennessee, he was entitled to reimbursement for it; and, in addition to the above provisions of the statute, appellant refers to certain Navy Travel Regulations which he claims give color to the good faith of his contention.[1]

---

1. "Except as provided in paragraph 7002–2b, a member who elects to transport his dependents at his own expense is entitled to a monetary allowance in lieu of transportation at the rates for all travel performed within the United States, regardless of the mode of transportation utilized. * * *

"Movements of dependents upon transfer or assignment of member to restricted area.

"When a member is transferred or assigned under permanent change of station orders to a place where his dependents are not permitted, for military reasons, to accompany him, he is entitled to transportation of dependents at government expense from the place at which the dependents are located on the date he received such orders to any place in the United States which he may designate, not to exceed the distance from the last point to which they were transported at government expense to the place so designated, or if the member is serving overseas and his dependents are located overseas, to any designated place inside or outside continental United States, as determined by the Secretary concerned. When the restriction is removed or when the member is transferred to a duty station to which movement of dependents is authorized, he is entitled to transportation of dependents at government expense from the aforementioned designated place to his duty station."

"Transportation of dependents not restricted to transportation to the next permanent station.

"If a member, upon receipt of permanent change of station orders, retains his dependents at the place that they were located when such orders were received, and he receives assignment to some subsequent permanent station, he shall be entitled (upon assignment to such subsequent permanent station) to transportation for his dependents at government ex-

The statements made by appellant in his application for reimbursement for travel of his dependents were not true, with respect to the place where his wife and daughter actually resided in California and the time they made the trip to Tennessee. Appellant testified that he didn't know when his dependents returned from California, and did not think that it made any difference, as long as they actually performed the travel. They did make the trip, they were his dependents, and he was, and is, supporting them; and under ordinary circumstances, he would be entitled to reimbursement for their travel. It seems doubtful that the jury would have convicted him on the above mentioned statements, of presenting a fraudulent claim to the government, as to his wife and daughter.

Appellant's claim for reimbursement for travel expenses for his stepson appears in a different light. The boy did not make the trip. Appellant could have believed that the boy joined his mother in California after she had left appellant. For the wife had planned to have him do so, and had so informed appellant. But it was for the jury to say whether the statement which appellant made to the government, with respect to his stepson, was known by him to be false at the time he presented it to the government for payment.

■ It is argued in appellant's brief that he had the right to collect for transportation for his dependents, whether they performed the travel or not. But the statutory provisions and the regulations, although somewhat confusing, authorize, first, *transportation*—not a monetary allowance—only *after the member of the uniformed service has received orders involving a permanent change of station;* and, further, in cases where orders for such change of station have not been issued, the regulations provide for a monetary allowance in lieu of transportation, *where the movement of the dependents is authorized.* In cases where such transportation has been furnished for travel performed, after the receipt of orders of change of station, but prior to the effective date of such orders, and such orders are thereafter canceled before their effective date, the person concerned is liable for any costs involved for the transportation furnished; and, in such a case, the person is not entitled to reimbursement, where the travel was performed at personal expense. None of these provisions justify a monetary allowance in lieu of the travel of dependents, when such travel is not performed. Moreover, appellant testified that it was his understanding that the dependent actually had to perform the travel in order to entitle appellant to a monetary allowance or reimbursement therefor, and that after he found that the boy had not performed the travel, appellant considered that he was not entitled to payment in lieu of transportation. This is obviously the proper interpretation of the statute and the regulations, in keeping with the Executive Order of the President [2] governing payment of monetary allowances in lieu of transportation in kind for dependents, in accordance with which payment was authorized "when such travel shall have been completed."

The case of Samuel v. United States, 9 Cir., 169 F.2d 787, 797/8, relied upon by appellant, holds that where several acts are pleaded in a single count and submitted to the jury, under instructions which allow a verdict of guilty on any one or more of such acts, a reviewing court has no way of knowing that any wrongly submitted act was not the one convicted upon; that if acts were pleaded in separate counts, or a special verdict

pense not in excess of the distance from the station from which he traveled when his dependents were so retained to such subsequent permanent station, or from his last permanent station to his new station, whichever is the greater, irrespective of

any interim permanent changes of station upon which he did not exercise his rights to dependents' transportation."

2. No. 9222, August 15, 1942. 7 F.R. 6511. See U.S.Code Cong.Service 1942, p. 1,025.

were required as to each overt act of a single count, the conviction would be sustained on a single well-proved act; and that if the acts in the case then under consideration were pleaded in a single count and the jury were instructed that they could convict on any one, the judgment would have to be reversed if any act were insufficient or insufficiently proved. We are of the view that the above authority is here inapplicable, since the jury could have found a verdict of guilt on all the acts charged in the single count. Moreover, the instructions of the district court did not permit of a verdict of guilty on one or more of such acts as in the case above cited.

▮▮ Appellant had been a member of the Navy fourteen years, serving throughout the World War and during the hostilities in Korea. In that time, he had two minor misconduct charges, in each case, for intoxication, but with no fine or punishment imposed against him. His conduct during his entire service had been rated 4–O, the highest Navy rating, or, as a Navy officer testified, "the star of the marks." In the light of appellant's record, character, and the nature of the offense, the jury asked the court to show clemency. The district court sentenced appellant to two years of imprisonment, and a fine of $250.00. It is a misfortune that an officer with such a long and fine record of service to his country in time of war be found guilty of presenting a fraudulent claim to the government for travel allowance for his dependents; but the facts, and the question of appellant's guilt, were for the jury, and the sentence, for the trial court; and their determinations are not matters for a reviewing court to pass upon.

We find no error in the district court's rulings on the admissibility of evidence and burden of proof, its instructions to the jury, or in its conduct of the case.

The judgment is affirmed.