**Kenneth A. KERCHER, Appellant,**

. v.

**UNITED STATES of America,
Appellee.**

**No. 19323.**

United States Court of Appeals
Eighth Circuit.

April 25, 1969.

Theodore F. Schwartz, Clayton, Mo., for appellant.

Irvin L. Ruzicka, Asst. U. S. Atty., St. Louis, Mo., for appellee, Veryl L. Riddle, U. S. Atty., and Jim J. Shoemake,

Asst. U. S. Atty., St. Louis, Mo., on the brief.

Before BLACKMUN, MEHAFFY and HEANEY, Circuit Judges.

BLACKMUN, Circuit Judge.

In a 10-count indictment Kenneth A. Kercher was charged with January 1968 violations of 18 U.S.C. § 287.[1] Each count alleged that Kercher presented to the Treasury Department, for payment, a claim against the United States which he knew to be fraudulent. It particularized by stating that the defendant presented, through the District Director of Internal Revenue at Saint Louis, an income tax return in the name of a specified person; that the return constituted a claim for refund; that Kercher then knew the return was fraudulent in that the person named did not file the return or authorize it to be filed; and that Kercher then knew the return was signed by someone other than the person named. Each count concerned a different taxpayer.

The defendant pleaded not guilty to all counts. At the ensuing jury trial he was acquitted on the third, fourth and fifth counts but convicted on the other seven. Judge Regan imposed no sentence of imprisonment. He levied a $300 fine, however, on each of the seven conviction counts. The fines thus totaled $2,100. Kercher appeals with retained counsel.

■ Apart from the issue of the defendant's intent, the basic facts are in no real dispute. Some are stipulated. We necessarily read the record in the light most favorable to the government as the prevailing party in the trial court. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Coil v. United States, 343 F.2d 573, 575 (8 Cir. 1965), cert. denied, 382 U.S. 821, 86 S.Ct. 48, 15 L.Ed.2d 67.

---

1. § 287. False, fictitious or fraudulent claims

  Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Kercher was president of Datamatic, Inc., a Missouri corporation organized in 1964 and specializing in automated billing and payroll preparation. In August 1966 Datamatic entered into a service contract with the Neighborhood Youth Corps, an antipoverty program. By this agreement Datamatic was to prepare the biweekly payroll checks for the persons who worked in the program and, also, their W–2 forms (statement of income tax withheld on wages). About 1,200 checks were issued each payroll period.

By early 1967 Kercher had expanded the business into the preparation of income tax returns and the discounting of anticipated tax refunds. The practice was for Kercher to pay the taxpayer-customer, in cash, the amount which his return, as prepared, disclosed as tax overpaid and refundable, less, however, a charge for preparing the return and a discount for the advance. Kercher would take from each taxpayer a signed power of attorney or more than one.[2]

Each of the persons named in the 10-count indictment entered into this arrangement with Kercher for the calendar year 1966, the returns for which were due in 1967. Each thus received from Kercher an amount equal to his indicated 1966 federal income tax overpayment as reduced by the preparation charge and the discount. However, the actual refund of tax, apparently with one exception, was made by the Treasury to the taxpayer and not to Kercher. The record shows, incidentally, that these persons did not remit any portion of their 1966 refunds, so directly received, to Kercher. So far as the record reveals, these taxpayers received a double payment, namely, their refund of the 1966 tax withheld and the advance from Kercher. The defendant did receive the refunds of other taxpayers for 1966.

The indictment against Kercher is not concerned with the calendar year 1966 and taxes with respect thereto. Instead, it concerns the calendar year 1967.

Defendant Kercher also prepared and, in January 1968, filed 1967 federal income tax returns for the 10 persons named in the indictment's counts. These were on Form 1040A, the so-called short form.[3] He signed the returns so prepared for nine of those 10 persons and did so in the respective taxpayers' names; the return for the person named in the fifth count of the indictment was filed unsigned. The persons named in the first nine counts were still enrolled in the Neighborhood Youth Corps in 1967. This time Kercher made no advance to the taxpayer for his refund even on a discounted basis.

Each of the taxpayers named in the conviction counts testified (a) that he did not file the 1967 return so prepared in his name by Kercher, (b) that he did not authorize Kercher to file that 1967 return, and (c) that he did not then know that Kercher had filed the return in his name. The addresses employed on the returns varied (at least four different

2. The powers employed were of various types. They included IRS Form 935 ("Power of attorney—individual return or declaration"), authorized by Treas. Regs. § 1.6012–1(a)(5) (1967) for situations of illness, absence or good cause, with the return then to be accompanied by the power or, in some instances, by a certified copy thereof; IRS Form 2848 ("General power of attorney"); IRS Form 2848–A ("Limited power of attorney"); and a private form, "valid from this day for a year," pledging "my income tax refund" to Datamatic and Kenneth A. Kercher "to secure a debt" and authorizing either of them "to sign this refund check." Each was signed by the taxpayer concerned but the government forms, except for naming Kercher, were in blank and uninformative as to the tax year or any specific authority granted or limitation imposed.

3. For the conviction counts the asserted 1967 overpayments marked for refund in the returns as filed were:

| | |
|---|---|
| Count I | $ 56.06 |
| Count II | 4.44 |
| Count VI | 8.46 |
| Count VII | 44.14 |
| Count VIII | 81.76 |
| Count IX | 46.36 |
| Count X | 102.18 |

ones were used) but all were controlled by Kercher and none was the residence or other address of the named taxpayer. None of the taxpayers had knowledge of the address used on the return filed in his name.

Kercher took the stand at his trial. He identified exhibits which he claimed were powers of attorney in his favor authorizing him to file 1967 returns for the taxpayers. He testified that he filed about 600 returns for 1966 and about 300 for 1967 and that he signed certain of the 1967 returns with the taxpayers' names because time was running short. He also testified that he notified each person so concerned that he was going to sign in accord with the power of attorney; that he made tax refund advances approximating $10,000 for 1966; that, when in 1967 he took the signed power of attorney, he asked whether the taxpayer would like to use it also for the tax year 1967; and that he refrained from inserting the date in order that the power could be so used.

The defense states that the only dispute in the evidence is as to Kercher's authority to sign and to file the returns. It asserts that the trial court erred in overruling defense motions for acquittal for the reason that the evidence was insufficient to convict as a matter of law. The argument seems to be (a) that no wrongful intent was demonstrated because the defendant admitted he prepared and signed each return, thought that the power of attorney he possessed gave him authority so to do, and did not mean to defraud the United States Treasury; (b) that the returns were not "false, fictitious, or fraudulent" because they asserted amounts which were actually refundable; and (c) that § 287 is a false claims statute enacted to protect the government from paying invalid claims and hence is not applicable to Kercher.

■ None of these contentions helps the defendant. Clearly, on this record, the issue of the criminal intent, which § 287 obviously requires, McCoy v.

United States, 169 F.2d 776, 783 (9 Cir. 1948), cert. denied, 335 U.S. 898, 69 S.Ct. 298, 93 L.Ed. 433, is for the jury. Our above recital of testimony so demonstrates. Whatever may have been the arrangement between Kercher and the respective taxpayers relative to the preparation and filing of 1966 returns in 1967 (a matter, as we have emphasized, which is not the subject of the indictment), every one of the taxpayers named in the conviction counts testified that he did not file the 1967 return Kercher prepared in his name, did not authorize its filing, and did not even know of its filing. The witness-taxpayers' testimony would establish that the blank powers of attorney were intended for the tax year 1966 and not 1967. And there are additional factors: the defendant's acquisition and continued possession of each taxpayer's 1967 W-2 form; his failure to deliver a copy thereof to the taxpayer; the nonexistence of any incapacity or absence on the part of the taxpayer, a status the IRS power form assumes; the failure to attach the power to the filed return; the blank character of the power; a handwriting expert's testimony that, in his opinion, the signatures affixed to the returns by the defendant were simulations of the true signatures; and the lame excuse that the signatures were affixed because the time to file the returns was running short (although the 1967 returns were not due until April 15, 1968, § 6072(a) of the 1954 Code, 26 U.S.C. § 6072(a)). The jury just did not believe Kercher's story that the powers were intentionally in blank in order to make them available for use for calendar 1967 as well as 1966 and were so understood by the taxpayers. With this conflict, authorization and intent clearly were for the jury. Fowler v. United States, 352 F.2d 100, 110 (8 Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663.

■ We are not persuaded by the suggestion that § 287 is inapplicable because the 1967 returns embraced claims validly assertable against the government. It may well be true that each return so

filed stated an amount of tax overpaid and refundable as a result of the year's withholding. But the falsity, which the jury was entitled to find on this record, lies in the fact that the return was not the return of the named taxpayer but was one prepared by Kercher, signed by him in the taxpayer's name, and filed by him, with an address controlled by him and unrelated to the taxpayer, and with an obvious anticipation of funds thus to be made available to the defendant. In contrast to whatever one might be able to make out of the unusual 1966 arrangement, and despite whatever right Kercher might possess against his double-receiving customers because of 1966, the 1967 overpayments were not refunds which Kercher was entitled to receive from the United States Treasury. What Kercher was trying to do, the jury found, was to lay claim (albeit to recoup the 1966 advances he had made) to what were claims of the taxpayers against the government. Therein lies the falsity and § 287 has appropriate application.

Long ago the Ninth Circuit touched upon the pertinent and applicable principle when it said, with respect to R.S. § 5438, a predecessor of the present § 287:

> "The character of the claim—that is to say, whether true, genuine, and honest, or false, fictitious, and fraudulent—must be determined in view of all of the facts and circumstances attending it. If it be originally forged, or otherwise fraudulently concocted, its presentation for payment, with knowledge of the facts, must necessarily be fictitious and fraudulent. Every whit as much so is a similar demand based upon a claim originally valid, but which the party presenting the claim knows has theretofore been paid, and is no longer a subsisting, honest, and just demand, *or which he knows he is wholly unauthorized to present and demand or receive any money on.*" (Emphasis supplied.) Dimmick v.

United States, 116 F. 825, 828 (9 Cir. 1902), cert. denied, 189 U.S. 509, 23 S.Ct. 850, 47 L.Ed. 923.

Also relevant is United States v. Branker, 395 F.2d 881, 889 (2 Cir. 1968). See United States v. Neifert-White Co., 390 U.S. 228, 233, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968), and Smith v. United States, 214 F.2d 305 (6 Cir. 1954).

■ The defense's final suggestion that, in any event, the prosecution should have been under 18 U.S.C. § 1001, the false statement statute, rather than under § 287, takes us nowhere. Sections 287 and 1001 are both derived from 18 U.S.C. § 80, 1940 edition, and from R.S. § 5438. Even if § 1001 were the applicable statute, the fact that the indictment counts refer to § 287 would be immaterial and not ground for reversal "if the error * * * did not mislead the defendant to his prejudice." Criminal Rule 7(c). See also Williams v. United States, 168 U.S. 382, 389, 18 S.Ct. 92, 42 L.Ed. 509 (1897); United States v. Hutcheson, 312 U.S. 219, 229, 61 S.Ct. 463, 85 L.Ed. 788 (1941); Paz Morales v. United States, 278 F.2d 598, 599–600 (1 Cir. 1960); Guith v. United States, 230 F.2d 481, 482 (9 Cir. 1956); Masi v. United States, 223 F.2d 132, 133–134 (5 Cir. 1955), cert. denied, 350 U.S. 919, 76 S.Ct. 208, 100 L.Ed. 805. There is nothing to indicate that this defendant was misled or confused by the statutory reference in each count. There can be no contention, and none is made, that Kercher did not know the nature of the indictment's charges.

We may have had in this case, initially, an element of youthful overassumption and certainly of very poor judgment. But, as Mr. Justice Holmes said, now almost a half century ago, "Men must turn square corners when they deal with the Government." Rock Island, A. & L. R. R. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920).

The judgment of conviction is affirmed.